

## IOWA JUDICIAL BRANCH — ELECTRONIC FILING
*Administering justice under the law equally to all persons.*

### Case Number: LACV044373    Case Title: JAY MANNINO, ET AL. V. MCKEE AUTO SALES, INC., ET

Opened: 06-27-2023

County: Dallas

Case Type: CONTRACT/BUYER PLAINTIFF        Judge: DJ02

Prayer Amount: $.00

⊞ Show/Hide Participants

| File Date | Docket # | Case History |
|---|---|---|
| 07-10-2023 01:10:00 PM Court | D0005 | OTHER AFFIDAVIT<br>JOHN MCKEE - PERSONAL SERVICE - 07/07/2023<br>Filed by: Court |
| 07-10-2023 01:08:00 PM Court | D0004 | OTHER AFFIDAVIT<br>ANTHONY MCKEE C/O JOHN MCKEE - 07/07/2023<br>Filed by: Court |
| 07-10-2023 01:07:00 PM Court | D0003 | OTHER AFFIDAVIT<br>MCKEE AUTO CENTER, INC. C/O ANTHONY MCKEE - 07/07/2023<br>Filed by: Court |
| 06-27-2023 12:49:00 PM Plaintiff | D0001 | PETITION FILED: PETITION<br>PETITION AT LAW FOR RELIEF AND JURY DEMAND<br>Filed by: ELIZABETH AHERN WELLS |
| 06-27-2023 12:49:00 PM Plaintiff | D0002 | CIVIL ORIGINAL NOTICE<br>Filed by: ELIZABETH AHERN WELLS |

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT
IN AND FOR DALLAS COUNTY

JAY MANNINO, et al.                        CASE NO. _____

      PLAINTIFFS

      - VS. -

McKEE AUTO CENTER, INC.          ORIGINAL NOTICE FOR PERSONAL
                                     SERVICE
      DEFENDANTS

---

TO THE ABOVE-NAMED DEFENDANT(S):

      You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the petition (and any documents filed with it) is attached to this notice. The attorney for the plaintiffs is Elizabeth Ahern Wells, whose address is 8250 Washington Village Dr., Dayton, Ohio 45458, That attorney's telephone number is 937-432-9500; facsimile number 937-432-9503.

      You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Dallas County, at the county courthouse in Adel, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

      If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at  515-286-3394. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

(SEAL)                                    _____
                                   CLERK OF COURT
                           _____ County Courthouse
                           _____, Iowa _____

IMPORTANT
YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

E-FILED  2023 JUN 28 1:01 PM DALLAS - CLERK OF DISTRICT COURT

# Iowa Judicial Branch

*Case No.* **LACV044373**
*County* **Dallas**

*Case Title*    JAY MANNINO, ET AL. V. MCKEE AUTO SALES, INC., ET

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued* **06/28/2023 01:01:06 PM**



*District Clerk of Court or/by Clerk's Designee of* Dallas      *County*
**/s/ Adam Juckette**

IN THE IOWA DISTRICT COURT
IN AND FOR DALLAS COUNTY

JAY MANNINO
      AND                        CASE NO.
MICHELLE MANNINO
      AND
JFM, LLC
55 LAKE HAVASU S
LAKE HAVASU CITY, ARIZONA 86403

      PLAINTIFFS

      - VS. -                    PETITION AT LAW FOR RELIEF
                                 AND JURY DEMAND

MCKEE AUTO CENTER, INC.
C/O ANTHONY MCKEE, S/A
400 1ST STREET
PERRY, IOWA 50220

      AND

ANTHONY MCKEE
400 1ST STREET
PERRY, IOWA 50220

      AND

JOHN MCKEE
400 1ST STREET
PERRY, IOWA 50220

      DEFENDANTS

---

## FIRST CLAIM

1.      This claim is for fraud and deceit and nondisclosure, concealment, and omission

of material facts, and is brought by each and every Plaintiff against each and

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

every Defendant. This case is about the fraud[1] and other violations of laws and Plaintiffs' rights engaged in by each Defendant, jointly and severally, in the sale of a $1,750,000, 2019 Prevost Liberty Elegant Lady 850 recreational vehicle motorcoach that the Defendants jointly and severally induced Plaintiffs to purchase after each Defendant knowingly and/or recklessly and repeatedly made false and misleading representations, assurances, and promises which were statements of fact about the vehicle's history, past and present condition, and fitness of the coach for the Plaintiffs' stated intended use that they were each advised of and the acts of concealment, nondisclosure, and omission of material facts and the truth by each Defendant all of which Plaintiffs each had no reason to believe to be false and which Plaintiffs each justifiably relied upon, including express representations of fact that:

    A.    The coach was sound in all respects, and

    B.    The coach had no prior repaired damage, and

    C.    The coach had no existing damage, and

    D.    The coach had no problems, and

    E.    The coach was in perfect condition, and

---

[1] Iowa courts have held that fraud requires a showing of (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage. The rules are not so strict, however, where fraud is alleged in cases of equity. Equity may grant relief absent a showing of scienter or pecuniary damage. In equitable fraud cases the elements of scienter and intent to deceive are closely related and are shown not only when the speaker has actual knowledge of the falsity of his or her representations but also when he or she speaks in reckless disregard of whether his or her representations are true or false. *First Sec. Bank & Tr. Co. v. King*, No. 05-2039, 2007 Iowa App. LEXIS 55, at *2 (Ct. App. Jan. 31, 2007).

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

      F.     The coach would be trouble-free when delivered, and when normally used thereafter or while normally used thereafter for a reasonable length of time, and

      G.     There had been no problems with the coach and there were no problems at that time either, and

      H.     The coach was perfectly suited for Plaintiffs' stated intended use.

2.     In addition to the specific allegations made in this claim, Plaintiffs Jay Mannino and Michelle Mannino each allege below that each Defendant committed acts and concealment, nondisclosure, and omission of material facts that constitute violations of the Private Right of Action for Consumer Frauds Act.[2]

3.     In addition to the specific allegations made in this claim, Plaintiffs allege below that each Defendant was enriched, directly and/or indirectly, by receipt of a benefit, to wit the payment by Plaintiffs to Defendants in the amount of $1,750,000 at Plaintiffs' expense and it is unjust to allow any Defendant to retain any benefit under the circumstances. Plaintiffs Jay Mannino and Michelle Mannino paid all of the $1,750,000 with personal funds.

4.     Plaintiffs justifiably relied upon the truthfulness of Defendants' representations, assurances, and promises of fact and upon the lack of any concealment or non-disclosures or omissions of material fact by Defendants in paying to Defendants $1,750,000, and if Plaintiffs had known the truth about the coach and about the false representations, assurances, and promises of fact made by Defendants and

---

[2] A statutory claim under Iowa Ch. 714H et seq.

3

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

about the concealments, non-disclosures, and omissions of material facts made by Defendants, they would not have bought the coach at all.

5. What Defendants knew or should have reasonably known but did not disclose to Plaintiffs, and in fact misled and omitted and concealed, was that having had the vehicle and using it and putting several thousands of miles on it since August 2021 each Defendant knew that the vehicle was not sound and was not perfectly suited for the Plaintiffs' stated needs and intended uses, that the coach had been subjected to damage and repair attempts, the coach had existing damage that was not obvious when it was first shown to Plaintiffs, it had present problems, it was not in perfect condition, it would not be trouble-free, and there had been material and substantial problems with it during Defendants' possession and use, and there were problems with it at the time Plaintiffs first asked Defendants about the coach, and that there were thousands of dollars of repairs that would be necessary to restore the coach to the condition that the Defendants represented it to be when they were advertising it and when they were talking about it with Plaintiffs and answering Plaintiffs' questions during telephone calls and when Plaintiffs were present at the Defendant's dealership sitting inside the coach and discussing the coach with Defendants. Defendants had multiple opportunities to disclose the truth to Plaintiffs before, during and after selling the coach to Plaintiffs but Defendants never did so.

6. Defendants knew the coach was not sound and that it had in fact been subjected to repair attempts on its multiple problems while McKee had it because of all the defect and failures that had to be repaired between beginning in October 2018

and continuing thereafter, including computer software, the slide out room system, steering column, more slide out problems, windows, telescoping system of the steering, the passenger side rear slide out system, the brake hose, computer malfunction codes, marker light failures, front left slide out room seal, engine system warning light, charging system malfunction, marker light failures, radar system, engine running hot, alternator belt, computer component failures, front bumper repair attempts and related problems in the coach.

7.   Each Defendant knew the coach had been subjected to damage repair attempts and/or inspections for same, including the front bumper area in September 2019, and inspected for undercarriage damage in need of repairs in March 2022, and subjected to slide out room repair attempts in May 2019 and July 2021. Thus, with this actual knowledge, Defendants' representations of fact were false at the time Defendants made their representations of fact to induce Plaintiffs to purchase the coach. The existence of their knowledge prior to making express representations of fact to Plaintiffs that the coach had no problems and the coach was in perfect condition and would be trouble free when delivered and for a reasonable time thereafter and that there had been no problems with the coach and no problems at delivery either, who Defendants knew at the time of their express representations of fact were interested in buying the coach, indicates Defendants made their misrepresentations and concealments and nondisclosures and omissions of material fact, and misleading statements for the purpose and with intent to deceive Plaintiffs and Plaintiffs were deceived thereby.

8.   Plaintiffs recognized that Defendants had possession of and operated the coach

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

for several thousands of miles so Plaintiffs had every reason to believe, and did believe, that Defendants had full knowledge of its history and condition and that they, Plaintiffs, justifiably relied on the truthfulness of the representations of fact made by Defendants and such express representations of fact were not puffery or mere opinions.

9.    Within a matter of days after getting the coach, Plaintiffs learned the truth about it and called Mckee RV and John McKee and told him what they had learned and asked for their money back and to cancel the transaction but they were curtly told that Defendants had no interest in refunding the money and suggested that Plaintiffs try to sell the coach themselves.

10.    At all times relevant, each Defendant was and is a supplier and merchant and a person[3] engaged in the business of selling and servicing recreational vehicles within the jurisdiction of this Court, and rendering advice and counsel to consumers with regard to and in relation to same.

11.    At all times relevant McKee Auto Center, Inc. was a motor vehicle retail dealer and merchant and supplier engaged in the business of selling and servicing new and previously owned recreational vehicles and motorcoaches and related parts, accessories, and services to the general public and doing business as McKee RV and McKee RV Center, a resident of and domiciled in Iowa.

12.    At all times relevant Anthony McKee was an employee and authorized representative of McKee Auto Center, Inc. It is believed that he is the owner of the

---

[3] Pursuant to Iowa Code § 714.16(1)(j).

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

dealership and at times worked in the role of manager, chief executive officer, chief operating officer, and chief financial officer and at times performed sales work with the general public. He was responsible for and exercised control of all aspects of all the dealership operations and a resident of and domiciled in Iowa.

13.    At all times relevant John McKee was an employee and authorized representative of McKee Auto Center, Inc. It is believed that he is the son of the owner of the dealership and at times worked in the role of a salesperson and a resident of and domiciled in Iowa.

14.    At all times relevant, JFM, LLC was and is a limited liability company organized under the laws and a resident of and domiciled in the state of Montana.

15.    At all times relevant, Jay Mannino and Michelle Mannino were individual persons and consumers and residents of and domiciled in Arizona, and Jay Mannino was a member of JFM, LLC.

16.    In the winter of 2022-2023, Jay and Michelle Mannino decided that they wanted travel across the country, seeing the sights and enjoying life to the fullest. To do that they decided to start looking for a trouble-free, quality, dependable, reliable, well-constructed and well-equipped, top of the line recreational vehicle to travel in. The long-time reputation of Prevost RVs met their needs and desired criteria and was well known in the recreational vehicle and motorcoach industry, so they started looking around, online and otherwise, to find one they could buy to begin their travels with.

17.    Plaintiffs saw an advertisement by McKee RV Center about a 2019 Prevost Liberty Elegant Lady 850 coach that seemed perfect. The McKee RV

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

advertisement said the coach was a "single-owner," among other things. The advertisement did not disclose all that the Defendants knew about the coach and, in fact, concealed material information about the coach and was misleading because of what the advertisement said and what it did not say but which Defendants knew.

18.    For the purpose of inducing the public, and these Plaintiffs, into trusting the Defendants, The McKee RV website advertised about the company and made the express representation that "Our business model is simple. Provide quality information and exceptional service," and Plaintiffs were so induced.

19.    Plaintiffs were led by Defendants to believe and think they could trust McKee RV and its people to be fair and honest with them too, so they began a series of phone calls with John McKee and Anthony McKee about that coach and their coach needs and intended uses related to their intended travels. During those calls, Jay and Michelle and John McKee and Anthony McKee talked about the condition of the RV, how it was equipped, whether it would suit their needs, its reliability and quality, that it was trouble free, the McKee's experience and intended purpose and use of the RV, and the reputation of Prevost and that this coach would live up to that. They also talked with the McKee's about how their coach uses, needs, and the purchase reasons of the Mannino Family and especially their consideration of this particular RV. Jay also told Defendants of his medical condition and that they were going to make a coach purchase so they could travel the country and "check off" Jay's "bucket list" of things to see and experiences that Jay and Michelle would have and enjoy together.

E-FILED  2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

20. John McKee and Anthony McKee very clearly represented to Jay and Michelle Mannino that this particular coach would fit their intended uses and needs and said that the Mannino family could start on their "bucket list" journey when they bought the RV. And to make it easier to take off right away, John McKee said that he would service the engine so they could "hit the road" on their journey when they left the McKee RV lot. John McKee told Jay Mannino that this coach would be the perfect coach for their intended trip and that there would be no problem with it and it would be trouble free, after Jay told John McKee that he did not have time to deal with "down time" or repairs and related expenses or the stress involved with coach problems.

21. Several times during these telephone conversations between the parties, Plaintiffs asked Defendants if there were any issues or problems with the coach at all and whether it had ever been in an accident or wreck, and Defendants represented and assured Plaintiffs that the coach was in great condition, had never been in an accident and had been serviced and maintained at Liberty Coach in Florida and/or the Prevost Service Center.

22. All of those representations and assurances and statements of fact by Defendants were relied upon as truthful and Plaintiffs had no reason to doubt what Defendants told them.

23. After multiple telephone conversations with Defendants and receiving the many representations and assurances and promises of fact from Defendants described above, Jay and Michelle decided to drive to Defendant's Perry location in Iowa to see the coach. When Plaintiffs arrived at Defendant's dealership, they were told

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

that this coach had actually been treated as being the McKee RV owner's personal vehicle but had never been registered in his name.

24.    While at McKee RV, Plaintiffs dealt with and continued their prior discussions with John McKee and Anthony McKee. Anthony McKee told Plaintiffs that the coach had no problems and was a wonderful coach and there had been no trouble with the coach and there was no hidden body damage on the coach while they were all sitting inside the coach and the coach was being shown to Plaintiffs. A short test drive was taken and Plaintiffs noticed a few issues and that the radar, cruise control and external temperature gauges were not working.

25.    A pre delivery inspection process occurred and Plaintiffs were told by McKee RV that the above noted several issues needed to be addressed before delivery and that the alternator belts had been recalled and needed to be replace but McKee didn't have them and that could be addressed by either Prevost Nashville or Liberty Coach in Florida after Plaintiffs hit the road and could stop in there.

26.    Having been induced to reasonably rely on the truthfulness of the express representations of fact being made to them by Defendants, and to make the purchase by the repeated representations and assurances and promises of fact from the Defendants described above, Plaintiffs purchased the subject coach and paid to Defendants a total of $1,750,000. On February 24, 2023 Plaintiffs left McKee RV to start on their trip around the country, just as Defendants said they would be able to do. Plaintiffs would not have purchased the subject coach but for the many representations, assurances and promises of fact the Defendants made to them and when they left Defendant's dealership, Plaintiffs had no idea the

extent of the misrepresentations and concealments and nondisclosures and omissions of material fact which they had been subjected to. The first stop on their journey was to be Prevost Nashville, where McKee had said they could get the recalled alternator belts replaced. They "hit the road" for Nashville, unaware of what they would soon learn there about the coach and McKee.

27.    On the way to Prevost Nashville, Plaintiffs noticed a significant and unexpected smell like solvent fumes strong enough to make Michelle Mannino's eyes water and the slide out room was making a loud clunking noise. After leaving Nashville and continuing on to Florida, they would realize that the solvent smelling fumes would worsen.

28.    Upon arrival at Prevost Nashville, the service writer and technicians there said they were very familiar with the coach and the McKees, "the prior owner", and they shared with Plaintiffs a vastly different story than what the Defendants had given them.

29.    Plaintiffs learned that the Prevost Nashville staff had been called by the police to come move the coach off the road because "Mr. McKee" could not drive it, so they took the coach back to the Prevost facility. In the course of telling Plaintiffs about that incident, Plaintiffs were shown where the bumper had hidden significant prior damage that had not been completely repaired and the metal frame holding the bumper was bent and that the coach's radar cruise would not work because of that. They also showed Plaintiffs where the rear engine compartment door had been worked on. They also told Plaintiffs how Mr. McKee had arrived at their location not in good shape and causing a problem with their employees.

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

30.    Prevost Nashville replaced the recalled belts and diagnosed and repaired the slide mechanism and Plaintiffs left for the RV Resort in Florida. It was at this point, before leaving, that Plaintiffs called McKee RV and John McKee and told them of the damage they had seen and what they now knew and asked for their money back and to cancel the transaction and were refused and told they should go sell it.

31.    While in route to Florida from Nashville, Plaintiffs noticed the fuel gauge was malfunctioning and fumes were coming into the coach. Upon arrival at the RV Resort, Plaintiffs discovered a big leak of what appeared to be antifreeze that smelled like solvent. It was dripping on the water tank monitor, which Plaintiffs had noticed was not operating properly but did not know why. Plaintiffs then contacted the Liberty Coach repair facility in Florida to get the unknown leak fixed.

32.    Plaintiffs took the coach to the repair facility in Stuart and found that the subfloor was saturated with antifreeze. The repair facility found that the entire "Esbar heater" was damaged and replaced the entire heating unit and said the problem was like the result of the coach not being properly winterized or stored outside and froze and there was evidence of a prior leak that had been cleaned up, indicating that each Defendant had been aware of the problem all along and not disclosed it to Plaintiffs and, in fact, cleaned the area up in order to conceal it from Plaintiffs. On top of that the fuel gauge was also found to be faulty.

33.    While there a salesperson told them he was the one who originally sold the coach to Mr. McKee and he told Plaintiffs about the prior damage to the coach and

showed Plaintiffs pictures that supported his statements to Plaintiffs, including pictures of the front bumper and area where he said Mr. McKee had hit something on the freeway and it was split nearly in half and was clearly the result of some sort of wreck or accident as the result of its use by Defendants.

34. Plaintiffs now realize that they were not told the truth about the coach before they bought it, that the coach had body damage, had been in an accident, damage still existed on the coach, some equipment, including the "Esbar heater" was damaged and/or inoperative and the coach had not been stored or winterized properly, in spite of the express representations of fact to the contrary that Defendants had made to Plaintiffs.

35. Had Plaintiffs known the truth about the recreational vehicle's history and/or condition, they never would have purchased the recreational vehicle.

36. Prior to selling the recreational vehicle to Plaintiffs, each Defendant knew or should have reasonably known about the truth about the recreational vehicle's soundness, prior damage repair, the existence of remaining damage, the coach's problems, its imperfect condition, that it was not trouble-free when delivered and would not be trouble-free when normally used for a reasonable time thereafter, and that there had been problems with the coach and there were remaining problems when Plaintiffs were looking at it when they first arrived at the Defendants' dealership location, but instead of telling Plaintiffs the truth about the recreational vehicle Defendants kept that information a secret and that was an unfair act and/or an act of deception and/or false pretense and/or false promise that was done with the intent that Plaintiffs rely upon the unfair practice

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

and such acts occurred in connection with the advertisement and sale of consumer merchandise, being the subject coach which was offered for sale or sold primarily for the personal, family, or household purposes and/or use of Plaintiffs, and each of the above-stated acts and omissions related to a material fact or facts regarding the coach and the subject transaction between the parties, and Plaintiffs suffered actual damages that were proximately caused by the Defendants' joint and several commission of the prohibited practices and/or acts described above.

37. At the time each Defendant committed its practices and acts described above, the Defendants knew that they were likely to affect the Plaintiff-consumers' conduct and decision with regard to the consumer merchandise, i.e., the subject coach, and in fact the Defendants' practices and acts did so affect the conduct and decisions of the Plaintiffs.

38. In the course of a consumer transaction for the sale of personal property each Defendant (1) made the express representations of fact recited above, (2) the said express representations of fact were false when made, (3) the said express representations of fact were material to the transaction and Plaintiffs, (4) the said express representations of fact were each made with knowledge of their falsity and/or reckless disregard for the truth, (5) the said express representations of fact were made with intent to deceive, (6) each Plaintiff relied upon the truthfulness of each said representation and upon there being no qualifications or withholding or concealment or nondisclosure or omission of material fact or of the truth, and (7) as a direct and proximate result thereof Plaintiffs were damaged

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

in the amount of more than $75,000.

## SECOND CLAIM

39.    The allegations of all other paragraphs and claims in this pleading are
incorporated as if fully rewritten herein.

40.    This claim is for violation of the Iowa Private Right of Action for Consumer
Frauds Act, Iowa Code § 714.16 et seq, by Defendants jointly and severally and is
brought by Jay Mannino and Michelle Mannino against each and every
Defendant.

41.    Each Defendant is a merchant obligated to deal with each Plaintiff in good faith in
all respects.

42.    At all times relevant, Jay Mannino and Michelle Mannino were each a natural
person and consumer[4] who engaged in a consumer transaction in connection with
the sale of consumer merchandise,[5] to wit: a 2019 Prevost Liberty Elegant Lady
850 recreational vehicle, VIN # 2PCVS3492JC710263, and suffered an
ascertainable loss of money as the direct and proximate result of a prohibited
practice or act in violation of this statute and chapter[6] by Defendant's jointly
and/or severally, which caused actual damages to them and considerable loss of
time.

43.    In the course of a consumer transaction between the parties, each Defendant
engaged in a practice or act that a person knows or reasonably should know was

[4] Pursuant to Iowa Code § 714H.2(3).

[5] Pursuant to Iowa Code § 714H.2(4).

[6] Iowa Code § 714H.3(1) and/or H3(2).

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

an unfair practice, deception, false pretense, and/or false promise related to a material fact or facts done with the intent that others, including the named Plaintiffs to this claim, would and did rely upon the unfair practice, in connection with the advertisement, sale or lease of consumer merchandise, as described above and below, by making a material misrepresentation and/or untruthful statement which was likely to and did affect a consumer's conduct or decision with regard to a product or service and which caused actual damages which were the result of the practice and were proximately caused by a prohibited practice or act.

44.    The acts and practices committed by each Defendant included acts and practices that were general violations and violations that were per se violations[7] of Iowa Private Right of Action for Consumer Frauds Act, Iowa Code such that Jay Mannino and Michelle Mannino may each bring this claim, and were willful and/or with and in wanton disregard for the rights of another, namely the named Plaintiffs to this claim, and include but is not limited to 714.16: 2.a.

45.    On or about February 24, 2023, the parties entered into a consumer transaction, involving a certain 2019 Prevost Liberty Elegant Lady 850 recreational vehicle, an interest in which each Plaintiff was induced by each Defendant to acquire for their personal family, and household recreational purposes, and as part of the deal each Defendant made certain express representations of fact regarding the RV, its registration and titling, history, condition, and more including as set forth

_____

[7] Pursuant to 714.16 promulgated under Iowa Code 714H.1 et seq.

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

above, all of which each Plaintiff reasonably relied upon as being truthful and all of which was made by each Defendant for the purpose of inducing Plaintiffs to purchase the said vehicle.

46.    Prior to paying the deposit and balance of the total amount, $1,750,000, with personal funds, the parties engaged in a series of conversations, questions, and answers that resulted in each Defendant making to each Plaintiffs false and misleading representations, assurances, and promises of material fact about the vehicle's history, past and present condition, and fitness of the coach for the Plaintiffs' stated intended use that Defendants were each advised of, in addition to each Defendant engaging in acts of concealment, nondisclosure, and omission of material facts and of the truth about the coach by each Defendant. Plaintiffs each  had no reason to believe the representations, assurances, and promises of material fact by Defendants would be false. Plaintiffs each justifiably relied upon the representations, assurances, and promises of material fact which Defendants each made to each Plaintiff, including the false and/or misleading express representations of material fact that:

     A.     The coach was sound in all respects, and

     B.     The coach had no prior repaired damage, and

     C.     The coach had no existing damage, and

     D.     The coach had no problems, and

     E.     The coach was in perfect condition, and

     F.     The coach would be trouble-free when delivered, and when normally used thereafter or while normally used thereafter for a

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

reasonable length of time, and

G.    There had been no problems with the coach and there were no problems at that time either, and

H.    The coach was perfectly suited for Plaintiffs' stated intended use.

47.    Plaintiffs purchased the recreational vehicle in reliance on the advertising and/or express representations of fact, statements, and assurances of material fact as stated above, and that there was no concealment, nondisclosure, or omission of material fact or of the truth about the coach, in any manner or degree, by each Defendant.

48.    After being induced to purchase the vehicle, Plaintiffs discovered that it did not conform to the representations of fact, statements, and assurances of material fact given Plaintiffs by each Defendant as set forth above, all of which caused direct and proximate damage and injury to each Plaintiff.

49.    The condition the vehicle was in at its delivery severely and substantially impaired its use and/or safety and/or value and did such to Plaintiffs which caused direct and proximate damage and injury to each Plaintiff.

50.    Plaintiffs each suffered and shall continue to suffer an ascertainable loss of money or property in excess of $75,000, including but not limited to actual, incidental and consequential damages, as a direct and proximate result of Defendant's joint and several commission of fraudulent acts, omissions, and practices, and also suffered a considerable loss of time.

51.    Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the above.

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

52.    As a result of the above facts, inter alia, in connection with the sale of consumer merchandise to the Plaintiffs, each Defendant committed one or more prohibited practices relating to material facts upon which they each intended Plaintiffs to each rely and each Plaintiff did so rely and such reliance was justified, and each Defendant knew or should have reasonably known such was being done, including but not limited to:

    A.    The coach was sound in all respects, and

    B.    The coach had no prior repaired damage, and

    C.    The coach had no existing damage, and

    D.    The coach had no problems, and

    E.    The coach was in perfect condition, and

    F.    The coach would be trouble-free when delivered, and when normally used thereafter or while normally used thereafter for a reasonable length of time, and

    G.    There had been no problems with the coach and there were no problems at that time either, and

    H.    The coach was perfectly suited for Plaintiffs' stated intended use.

53.    Plaintiffs each suffered and shall continue to suffer an ascertainable loss of money or property in excess of $75,000, including but not limited to actual, incidental and consequential damages, as a direct and proximate result of Defendant's joint and several commission of unfair and/or deceptive and/or fraudulent prohibited practices.

54.    Plaintiffs suffered and shall continue to suffer actual, incidental and

19

consequential damages as a direct and proximate result of the above.

### THIRD CLAIM

55.    The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

56.    This claim is for unjust enrichment and is against each and every Defendant and brought by each and every Plaintiff.

57.    Plaintiffs allege that each Defendant was enriched, directly and/or indirectly, by receipt of a benefit, to wit the payment by Plaintiffs to Defendants of $1,750,000 at Plaintiffs' expense and it is unjust to allow any Defendant to retain any benefit under the circumstances.[8]

58.    During the course of the subject transaction between the parties, a false representation of fact was made by each and ever Defendant with knowledge of its falsity or with utter disregard and recklessness such that knowledge may be concluded or found, as stated in further detail above and below.

59.    During the course of the subject transaction between the parties, a knowing concealment and/or nondisclosure and/or omission of fact was done by each and every Defendant at a time when, and under circumstances where, there was a duty to disclose, to wit: before and during the sale, and prior to the delivery of the

---

[8] In order to recover under unjust enrichment, a plaintiff must prove "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances...The critical inquiry is that the benefit received be at the expense of the plaintiff." *Welte Ins., Inc. v. Big Red Lighting & Elec., Inc.*, 808 N.W.2d 755 (Iowa Ct. App. 2011).

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

recreational vehicle to Plaintiffs, each Defendant concealed from each and every Plaintiff material facts and the truth about the coach as further described in more detail above and below.

60.    Each of said Defendant's acts and omissions of concealment and nondisclosure and omission of material facts were known or should have been known to be false when made and were material to the transaction.

61.    Each of said Defendants' acts and omissions of concealment and nondisclosure and omission of material facts were made with the intent of deceiving and/or misleading each and every Plaintiff into relying upon it and each Plaintiff was, in fact, so deceived and misled.

62.    Plaintiffs each were justified in relying on the truthfulness of all representations and the absence of any concealment, nondisclosure, or omission of material fact and the truth, and did, in fact, so rely.

63.    Plaintiffs each suffered and shall continue to suffer an ascertainable loss of money or property in excess of $75,000, including but not limited to actual, incidental and consequential damages, as a direct and proximate result of Defendant's joint and several commission of unjust enrichment.

64.    Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the above.


    **WHEREFORE**, judgment is demanded against Defendants, jointly and severally, and/or as applicable according with the allegations above, as deemed proper and lawful by the Court as follows:

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

## PRAYER FOR RELIEF

1. On the first claim for fraud, such actual damages of more than $25,000 as proven at trial and such punitive damages of more than $25,000 as proven and deemed proper and lawful at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

2. On the second claim for violation of the Private Right of Action for Consumer Frauds Act, such actual damages of more than $25,000 as proven at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

3. On the third claim for unjust enrichment, such actual damages of more than $25,000 as proven at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court;

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the first claim above, rescission of the contract plus any remedies and relief as deemed proper, equitable, and lawful by the Court, for each and every violation which may be proven at trial;

plus all other remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial; an Order finding Plaintiffs to have rescinded the transaction and/or to have revoked acceptance; expenses of suit and litigation, interest from the date of injury, reasonable attorney fees; together with any and all other legal and equitable relief deemed necessary and just, plus all costs.

E-FILED 2023 JUN 27 12:49 PM DALLAS - CLERK OF DISTRICT COURT

## JURY DEMAND

Plaintiffs demand trial by Jury on all claims and all issues.

Respectfully submitted,

/s/ Elizabeth Ahern Wells
ELIZABETH AHERN WELLS (AT0014038)
Attorney for Plaintiffs
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone:  937.432.9500
Facsimile:  937.432.9503
Email:      Beth@BurdgeLaw.com

Y:\data\JFM LLC, Mannino Jay & Michelle\Core Pleadings\Core Complaint 062623 bw.wpd

## AFFIDAVIT OF SERVICE

**State of Iowa**                    **County of Dallas**                    **District Court**

Case Number: LACV044373

Plaintiff:
**JAY MANNINO, MICHELLE MANNINO AND JFM, LLC 55 LAKE HAVASU
S, LAKE HAVASU CITY, ARIZONA 86403**

vs.

Defendant:
**MCKEE AUTO CENTER, INC., ANTHONY MCKEE, JOHN MCKEE**

For:
Burdge Law Office
8250 Washington Village Dr
Dayton, OH 45458

Received by Burris Process Serving, LLC on the 29th day of June, 2023 at 9:28 am to be served on **MCKEE
AUTO CENTER, INC. C/O ANTHONY MCKEE, 400 1ST AVE, PERRY, IA 50220**.

I, Alese Burris, being duly sworn, depose and say that on the **7th day of July, 2023** at **11:54 am, I:**

served a **CORPORATION** by delivering a true copy of the **ORIGINAL NOTICE FOR PERSONAL
SERVICE, PETITION AT LAW FOR RELIEF AND JURY DEMAND** with the date and hour of service
endorsed thereon by me, to: **JOHN MCKEE** as **OWNER** for **MCKEE AUTO CENTER, INC.**, at the
address of: **400 1ST AVE, PERRY, IA 50220**, and informed said person of the contents therein, in
compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server, in good
standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 10th
day of July , 2023

NOTARY PUBLIC
**LEAH BURRIS**
Commission Number 824421
My Commission Expires
March 23, 20__

**Alese Burris**
Process Server

**Burris Process Serving, LLC
699 Walnut Street
Suite 400
Des Moines, IA 50309
(515) 978-8558**

Our Job Serial Number: BPL-2023000612

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.1t

## AFFIDAVIT OF SERVICE

**State of Iowa**                    **County of Dallas**                    **District Court**

Case Number: LACV044373

Plaintiff:
**JAY MANNINO, MICHELLE MANNINO AND JFM, LLC 55 LAKE HAVASU
S, LAKE HAVASU CITY, ARIZONA 86403**

vs.

Defendant:
**MCKEE AUTO CENTER, INC., ANTHONY MCKEE, JOHN MCKEE**

For:
Burdge Law Office
8250 Washington Village Dr
Dayton, OH 45458

Received by Burris Process Serving, LLC on the 29th day of June, 2023 at 9:28 am to be served on
**ANTHONY MCKEE, MCKEE AUTO CENTER, 400 1ST AVE, PERRY, IA 50220.**

I, Alese Burris, being duly sworn, depose and say that on the **7th day of July, 2023** at **11:54 am, I:**

served a **CORPORATION** by delivering a true copy of the **ORIGINAL NOTICE FOR PERSONAL
SERVICE, PETITION AT LAW FOR RELIEF AND JURY DEMAND** with the date and hour of service
endorsed thereon by me, to: **JOHN MCKEE** as **OWNER** for **ANTHONY MCKEE**, at the address of:
**MCKEE AUTO CENTER, 400 1ST AVE, PERRY, IA 50220,** and informed said person of the contents
therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server, in good
standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 10th
day of July , 20 23

NOTARY PUBLIC

**LEAH BURRIS**
Commission Number 824421
My Commission Expires
March 23, 20 26

**Alese Burris**
Process Server

**Burris Process Serving, LLC**
**699 Walnut Street**
**Suite 400**
**Des Moines, IA 50309**
**(515) 978-8558**

Our Job Serial Number: BPL-2023000613

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.1t

## AFFIDAVIT OF SERVICE

**State of Iowa**
                                    **County of Dallas**
                                                                        **District Court**

Case Number: LACV044373

Plaintiff:
**JAY MANNINO, MICHELLE MANNINO AND JFM, LLC 55 LAKE HAVASU
S, LAKE HAVASU CITY, ARIZONA 86403**

vs.

Defendant:
**MCKEE AUTO CENTER, INC., ANTHONY MCKEE, JOHN MCKEE**

For:
Burdge Law Office
8250 Washington Village Dr
Dayton, OH 45458

Received by Burris Process Serving, LLC on the 29th day of June, 2023 at 9:28 am to be served on **JOHN
MCKEE, MCKEE AUTO CENTER, 400 1ST AVE, PERRY, IA 50220.**

I, Alese Burris, being duly sworn, depose and say that on the **7th day of July, 2023** at **11:54 am, I:**

**PERSONALLY** served by delivering a true and correct copy of the **ORIGINAL NOTICE FOR PERSONAL
SERVICE, PETITION AT LAW FOR RELIEF AND JURY DEMAND** to **JOHN MCKEE** at **MCKEE AUTO
CENTER, 400 1ST AVE, PERRY, IA 50220**, the said premises being the respondent's usual place of
employment, within the State of Iowa.

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server, in good
standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the ___10th___
day of _July_____, 20_23_

_Leah Burris_
NOTARY PUBLIC

LEAH BURRIS
Commission Number 824421
My Commission Expires
March 23, 20__

_Alese Burris_
**Alese Burris**
Process Server

**Burris Process Serving, LLC
699 Walnut Street
Suite 400
Des Moines, IA 50309
(515) 978-8558**

Our Job Serial Number: BPL-2023000614

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.1t